**MITCHELL, Insurance Com'r of California,
v. MAURER et al.
No. 7262.**

Circuit Court of Appeals, Ninth Circuit.
Feb. 26, 1934.

See, also, 67 F.(2d) 286.

Frank L. Guerena, of San Francisco, Cal., for appellant.

E. D. Lyman, P. B. Plumb, C. L. McGaughey, and Ben S. Beery, all of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Since the precise sequence of events is of crucial importance in determining the question presented by this appeal, involving as it does priority of jurisdiction as between a federal and a state court, we will give a chronological statement of the facts.

1. The appellee corporation was organized under the laws of Delaware. Prior to April 19, 1933, it was authorized to transact, and was engaged in, the business of insurance in California under a certificate of authority issued by the appellant.

2. On March 23, 1933, in the Court of Chancery for New Castle county, Del., the appellee Maurer filed a bill for the appointment of a receiver for the appellee corporation. The complaint recited that the appellee Maurer had recovered a judgment against Fred Sauderoff in a New Jersey court for $20,000; that of this amount $5,000 was covered by a casualty insurance policy in favor of Sauderoff issued by the Commonwealth Casualty Company, of Pennsylvania, which, it was alleged, was a predecessor in interest of the appellee corporation; that, by reason of an alleged merger with the Commonwealth Company, the appellee corporation is indebted to the appellee Maurer in the sum of $5,-000; and that the appellee corporation was insolvent.

3. On March 30, 1933, the appellant suspended the right of the appellee corporation to transact the business of workmen's compensation insurance in California. That suspension was in effect on April 19, 1933.

4. On April 19, 1933, at an undisclosed hour, on motion of the solicitor for the complainant-appellee Maurer for a decree pro confesso, the Chancellor of the Delaware court appointed three receivers for the appellee corporation, as set forth more fully infra.

5. On April 19, 1933, at 4:45 p. m., a bill of complaint, apparently verified on April 18, 1933, was filed in the court below, the pleading being entitled a "Petition for Appointment of Ancillary Receiver," and bearing the caption of "Bertha E. Maurer v. International Re-Insurance Corporation," etc. The preamble of the pleading, however, recited that it was "the petition of Arthur G. Logan, Carl M. Hansen and George de Bienzille (sic) Keim," who, the petition alleged and the record so shows, were appointed receivers for the appellee corporation by the Delaware court.

6. On April 19, 1933, at 4:54 p. m., in the superior court for the county of Los Angeles, Cal., the appellant filed a petition praying, inter alia, that he be placed into possession of the property and business of the appellee corporation. That court will hereinafter be referred to as "the state court."

7. On April 19, 1933, at an undisclosed hour, the court below signed an order appointing Keim and W. H. Comstock ancillary receivers of the appellee corporation, and enjoining any one else from interfering with its property.

8. On April 19, 1933, at an undisclosed hour, the state court issued a temporary restraining order against the appellee corporation enjoining it from disposing of its property or transacting business in California, and ordering the appellant "into the actual possession of said property."

9. On April 20, 1933, at 9:30 a. m., the temporary restraining order of April 19, 1933, supra, an order against the appellee corporation to show cause, and a copy of the petition, filed in the state court, were served on Emil Johnson, as vice president of the appellee corporation. The order to show cause was returnable on April 28, 1933.

10. On April 20, 1933, at an hour subsequent to 9:30 a. m., and variously indicated as having been prior to 12:20 p. m. or prior to 2 p. m., or shortly afterward, Comstock served on Johnson a copy of the order of the court below appointing the ancillary receivers, and told Johnson that "until further orders" the latter "was to regard himself as an agent and employee of said ancillary receivers."

11. On April 20, 1933, at an hour vari-ously indicated as having been 12:20 p. m. or about 2 p. m., as already stated, Johnson exhibited to two deputies of the appellant the order appointing ancillary receivers.

12. On April 20, 1933, at a time variously stated in the record to have been in the morning or at 2 in the afternoon, two deputies of the appellant served Johnson with an "Order to Seize and Take Possession," signed, not by the state court of California, but by the appellant himself, through a deputy.

13. On April 20, 1933, at 1:50 p. m., the order of the court below appointing ancillary receivers and restraining all other persons from interfering with the property of the appellee corporation was filed in the court below.

14. On April 21, 1933, in the afternoon, a certified copy of the order of the court below appointing ancillary receivers was served upon the appellant, through two deputies. A copy of the restraining order by the court below was also served on the appellant, on the same afternoon.

15. On April 25, 1933, various amendments to the bill of complaint were filed in the court below, together with a new "petition for the appointment of ancillary receiver, including the amendments, and together with an exemplified copy of the bill of complaint filed in the Delaware court, and other papers.

16. On April 25, 1933, the appellee corporation filed its answer to the bill of complaint in the court below, admitting all the allegations of the bill, and consenting to the appointment of an ancillary receiver or receivers.

17. On a date undisclosed by the record, the state court in California continued the hearing on the order to show cause from April 28, 1933, to May 10, 1933, in view of the pendency of the proceedings in the court below.

18. On May 2, 1933, the appellant served upon the appellee corporation, and filed in the court below, a "motion to vacate the order appointing receivers," etc., "to dismiss the petition for the appointment of receivers, and to re-examine the ex parte order appointing the receivers."

19. On May 12, 1933, the court below denied the appellant's motion to vacate the order.

20. On June 13, 1933, a motion to rehear the appellant's motion to vacate the order appointing receivers, etc., which motion to rehear was filed by the appellant on May 26, 1933, was denied by the court below.

21. From the orders of the court below of May 12, 1933, and of June 13, 1933, supra, the present appeal was taken.

There are several preliminary questions to be disposed of before we address ourselves to the main issue.

In the first place, the status of the appellant as a party herein has been seriously brought into question. In the captions of the transcript of record, of the supplemental transcript of record, and of the various briefs, the appellant is designated as "intervenor." In the appellant's petition for appeal, in his assignments of error, in his cost bond, in the stipulation re supplemental transcript of record on appeal, and, finally, in the specifications of error in his own brief, the appellant is repeatedly referred to as "intervenor." He is therefore clearly in error when he states, in his supplemental brief, that "the only reference in the record to appellant as 'intervenor' is on Page 71, where counsel for the State Insurance Commissioner signed the petition for appeal as 'attorneys for intervenor,' and in the cost bond (Tr. p. 75), * * *" and that "The assignments of error (Tr. p. 72) * * * properly refer to the Commissioner as the 'appellant.'"

In view of these frequent references by the appellant to himself as "intervenor," we regard as quite pardonable the error of the appellees in accepting the appellant's own designation of himself, and devoting the first thirteen pages of their brief to the proposition that "the right of intervention must be in subordination to and in recognition of the main proceeding."

Nevertheless, a careful study of the record and of the law applicable thereto convinces us that the appellant has brought himself into court—not, indeed, as intervener, but by his motion to vacate the order of the court below appointing the ancillary receivers, as set forth above. The order of the lower court contained an injunction in the following language, the italics being our own: "It is further ordered, adjudged and decreed that the said respondent and each and every of its agents and employees, and all the creditors of the respondent and all * * * *commissioners and all deputies* * * * and generally *all persons* * * * *whatsoever* are hereby enjoined from removing, transferring, disposing," etc.

We believe that the language of the above injunction was sufficient to bring the appellant into court and to authorize his filing of the motion to vacate. It will be remembered that a certified copy of the restraining order of the court below was served upon the appellant, on the day after the order was filed.

In Mitchell v. Lay, 48 F.(2d) 79, 84, 85, this court said: "At this juncture we pause to consider appellee's motion to dismiss so far as the motion is based upon the claim that the appellant is not entitled to appeal from the order granting the injunction or from the order refusing to vacate the receivership on the ground that the appellant is not a party to the action, and that the appellant did not ask permission to intervene in the action, that therefore he is a stranger to the action and not entitled to the appeal from the orders made. It is true that the appellant is not a party to the original action, but when he was brought into court by the process of the court at the instigation of the parties to the action or of the receiver he became a party to the ancillary proceedings and entitled to appeal from the judgment rendered against him. The judgment therein rendered was as to him final and appealable as such." Cases cited, including O'Neil v. Welch (C. C. A.) 245 F. 261, and Ward v. Foulkrod (C. C. A.) 264 F. 627, infra.

Certiorari was denied in Lay v. Mitchell, 283 U. S. 864, 51 S. Ct. 656, 75 L. Ed. 1469, and the case was cited with approval, on the very point discussed in the foregoing excerpt, in Johnson v. Manhattan Ry. Co., 289 U. S. 479, 495, 53 S. Ct. 721, 77 L. Ed. 1331.

Having determined that the appellant is in court, we next turn our attention to the question of whether or not, regardless of priority of jurisdiction as against the state court, the court below had *any* jurisdiction at all to appoint ancillary receivers.

In the first place, the general rule in the federal courts is that a receiver in equity has no right to sue in courts of a foreign jurisdiction. Booth v. Clark, 17 How. (58 U. S.) 338, 348-356, 15 L. Ed. 164.

But the rule is subject to the limitation that the objection applies when the attempted suit of the receiver is for the purpose of taking property out of the jurisdiction. This limitation was recognized by Mr. Justice Wayne in the leading case of Booth v. Clark, supra, who said, at page 352 of 17 How.: "Our industry has been tasked unsuccessfully to find a case in which a receiver has been permitted to sue in a foreign jurisdiction for the property of the debtor."

Again, the following passage on page 356 of 17 How., makes it clear what suits the learned justice had in mind: "If he seeks to be recognized in another jurisdiction, it is to take the fund there out of it, without such

court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court, the aid of which he seeks, for his faithful conduct and official accountability."

A similar limitation of the rule is evidence in another leading case on the subject, Great Western Mining Co. v. Harris, 198 U. S. 561–576, 25 S. Ct. 770, 774, 49 L. Ed. 1163: "The ground of this conclusion is that every jurisdiction, in which it is sought, by means of a receiver, to subject property to the control of the court, has the right and power to determine for itself who the receiver shall be, and to make such distribution of the funds realized within its own jurisdiction as will protect the rights of local parties interested therein, and not permit a foreign court to prejudice the rights of local creditors by removing assets from the local jurisdiction without an order of the court, or its approval as to the officer who shall act in the holding and distribution of the property recovered."

Again, this limitation was recognized by the Supreme Court in Sterrett v. Second National Bank, 248 U. S. 73, 76, 77, 39 S. Ct. 27, 28, 63 L. Ed. 135, where it said: "Since the decision of this court in Booth v. Clark, 17 How. 322, 15 L. Ed. 164, it is the settled doctrine in federal jurisprudence that a chancery receiver has no authority to sue in the courts of a foreign jurisdiction to recover demands or property therein situated. The functions and authority of such receiver are confined to the jurisdiction in which he was appointed. The reasons for this rule were fully discussed in Booth v. Clark, and have been reiterated in later decisions of this court. Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380; Great Western Mining Co. v. Harris, 198 U. S. 561, 575, 577, 25 S. Ct. 770, 49 L. Ed. 1163; Keatley v. Furey, 226 U. S. 399, 403, 33 S. Ct. 121, 57 L. Ed. 273. This practice has become general in the courts of the United States, and is a system well understood and followed. It permits an application for an ancillary receivership in a foreign jurisdiction where the local assets may be recovered and, if necessary, administered."

Indeed, specific recognition of the right of the primary receiver to ask for the appointment of an ancillary receiver in a foreign jurisdiction is contained in the case of Ward v. Foulkrod (C. C. A. 3) 264 F. 627, which is discussed at greater length infra. At page 636 of the opinion in 264 F., we find the statement that the Chancellor of a Delaware court authorized its receivers "to take such proceed-

ings as may be necessary in the courts of any other state or of the United States *to secure the aid of such courts by the appointment of ancillary receivers, or otherwise, in taking possession and charge of the property and assets of the said Badenhausen Company.*" Similar deference to the rights and powers of courts of foreign jurisdiction was exhibited in the same Chancellor's amended decree. Similar language was employed by the Delaware Chancellor in the case at bar.

Of such a situation, the court, in Ward v. Foulkrod, supra, said, at pages 636, 637 of 264 F.:

"These parts of the Chancellor's decree are in complete harmony with the general rule that a receiver, appointed by a court of chancery, has no legal status outside the territorial jurisdiction of the court appointing him. The court has no power beyond the bounds of its jurisdiction, and can confer none upon its receiver. He receives his powers from the court and can only exercise them within its jurisdiction. * * *

"What then is to be done? * * *

"The appropriate proceeding in such a case as this (which is readily distinguishable from O'Neil v. Welch, supra [(C. C. A.) 245 F. 261], and similar cases where the foreign court had no rights to be preserved) is not by application of the receivers appointed by the court of primary jurisdiction addressed to the court of foreign jurisdiction that it summarily discharge its receiver and direct him to turn over to them the corporation's property in his hands, but is by application to that court praying it to discharge its receiver after he has passed his account and appoint ancillary receivers. When the prayer of such a petition has been granted and ancillary receivers have been appointed, all rights, those of the domiciliary court and of the foreign court, and of all stockholders and creditors of the corporation in both jurisdictions, will fall into their proper places and will be duly cared for and protected in the orderly administration of the estate. * * *

"In order, however, that there shall be no misunderstanding as to what we consider to be the rights of the receivers of the State court in future appropriate proceedings looking to the appointment of ancillary receivers in jurisdictions foreign to that of their appointment, we direct that the order appealed from be modified so as to provide that the dismissal of the petition shall be without prejudice to the right of the Delaware receivers to institute appropriate proceedings for the appointment of ancillary receivers for the

property of the corporation now in the hands of the receiver appointed by the District Court of the United States for the Eastern District of Pennsylvania."

See, also, Rust v. United Waterworks Co. (C. C. A. 8) 70 F. 129, 133; Seested v. Bonfils (D. C.) 33 F. (2d) 185, 186.

It is observable that in the instant case the petitioning receivers in the court below did not ask, either in the original or in the amended bill, to be appointed ancillary receivers; and that in the bill as amended they asked that the rights of creditors in the foreign jurisdiction be safeguarded: "That this court take such steps as it deems meet and proper to ascertain the indebtedness of respondent, International Re-Insurance Corporation, to the creditors thereof within the jurisdiction of this court, and this court fully administer said respondent's property and assets within this jurisdiction and determine the respective rights, liens and priorities of said respondent's said creditors, and after this court shall have taken such steps with respect to respondent's said property and assets as it shall deem meet and proper in the interests of the creditors within the jurisdiction of this court, that it deliver or cause to be delivered to your petitioners herein the net balance of said property and assets to be remitted to and administered by said Chancery Court of the State of Delaware."

Assuredly such a petition does not come within the strictures of the Supreme Court, in the Great Western Case, supra, as to the disregard of the "rights of local creditors."

The appellant insists that neither the original bill of complaint nor the bill as amended was sufficient to confer jurisdiction upon the court below.

Assuming, but not deciding, that the appellant is correct as to the original bill, we will examine his objections to the bill as amended.

First, the appellant complains that the bill as amended fails to allege that the appellee corporation was insolvent, in that there was an excess of liabilities over assets. But paragraph 5 of the bill as amended sets forth that "the nature of the cause of action is more particularly referred to in the bill of complaint in the aforesaid [Delaware] action, an exemplified copy of which is hereto annexed and made part hereof by reference." Reference to the latter paper discloses that it specifically sets forth: "13. That the said respondent corporation is now possessed of certain property, rights and credits, but that said

corporation is insolvent in that it is unable to meet its current and maturing obligations as they fall due."

The appellant also objects that the bill as amended fails to state that the complainant-appellee Maurer is a lien or judgment creditor against the appellee corporation, or that she "had exhausted her legal remedies." Reference again to the Delaware bill, however, reveals that it sets forth that the appellee Maurer recovered a judgment against Fred Sauderoff, in whose favor there was issued a casualty insurance policy for $5,000 by the Commonwealth Casualty Company, alleged to be a predecessor in interest of the respondent-appellee corporation, which Commonwealth Company, according to the Delaware bill, under the laws of New Jersey, where the judgment was obtained, "became indebted to the complainant in the sum of $5,000."

■ Furthermore, the foregoing objection as to want of equity may be waived by the answer of the corporation for which receivers are sought. This doctrine is enunciated in Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 500, 501, 43 S. Ct. 454, 457, 67 L. Ed. 763, the sole case cited by the appellant in support of his contention on this point. Comprehensively reviewing the authorities on the subject, the Supreme Court, in the Pusey Case, said: "The case at bar is also unlike In re Metropolitan Railway Receivership, 208 U. S. 90, 109, 110, 28 S. Ct. 219, 52 L. Ed. 403, and many others, in which there was express consent by the corporation to the appointment of the receiver, or where the indebtedness to plaintiff and the corporation's insolvency were admitted, or the lack of jurisdiction in equity was waived. The objection that the bill does not make a case properly cognizable in a court of equity does not go to its jurisdiction as a federal court. Smith v. McKay, 161 U. S. 355, 16 S. Ct. 490, 40 L. Ed. 731; Blythe v. Hinckley, 173 U. S. 501, 19 S. Ct. 497, 43 L. Ed. 783. The objection may, as pointed out in Reynes v. Dumont, 130 U. S. 354, 395, 9 S. Ct. 486, 32 L. Ed. 934, be taken by the court of its own motion. But, unlike lack of jurisdiction as a federal court, Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U. S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462, lack of equity jurisdiction (if not objected to by a defendant) may be ignored by the court, in cases where the subject-matter of the suit is of a class of which a court of equity has jurisdiction. And where the defendant has expressly consented to action by the court, or has failed to object

seasonably, the objection will be treated as waived. Brown v. Lake Superior Iron Co., 134 U. S. 530, 535, 536, 10 S. Ct. 604, 33 L. Ed. 1021; Southern Pacific R. R. Co. v. United States (No. 1), 200 U. S. 341, 349, 26 S. Ct. 296, 50 L. Ed. 507. In cases relied upon by respondent there was such waiver. But, here, the company strenuously insisted throughout upon the absence of jurisdiction and denied every material allegation on which it is sought to support the bill."

In the Metropolitan Railway Case, supra, cited by the Supreme Court in the foregoing excerpt, the complainants were not even judgment creditors, in addition to having failed to issue execution on any judgments. Yet in that case the court said:

"It is also objected that the circuit court had no jurisdiction because the complainants were not judgment creditors, but were simply creditors at large of the defendant railways. The objection was not taken before the circuit court by any of the parties to the suit, but was waived by the defendant consenting to the appointment of the receivers, and admitting all the facts averred in the bill. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371–380, 14 S. Ct. 127, 37 L. Ed. 1113–1115. That the complainant has not exhausted its remedy at law—for example, not having obtained any judgment or issued any execution thereon—is a defense in an equity suit which may be waived, as is stated in the opinion in the above case, and, when waived, the case stands as though the objection never existed.

"In the case in the circuit court the consent of the defendant to the appointment of receivers, without setting up the defense that the complainants were not judgment creditors who had issued an execution which was returned unsatisfied, in whole or in part, amounted to a waiver of that defense." Cases cited.

Finally, the appellant asserts that, even in the bill as amended, "Diversity of citizenship is not alleged and no federal question is alleged to exist." But both the original bill and the bill as amended contain, in the preamble, the names of the petitioners, and, by reference to the order signed by the Delaware Chancellor, it is apparent that the three petitioners were respectively citizens of Delaware, Pennsylvania, and New Jersey. The bill as amended has annexed to it the above-mentioned order of the Delaware Chancellor. Both the original bill and the bill as amended recite that the appellee corporation was organized under the laws of Delaware.

■ The objection that nonresidents of California were suing a Delaware corporation in a federal court in California, 28 USCA § 112 (a), was waived by the answer of the appellee corporation. Central Trust Co. v. McGeorge, 151 U. S. 129, 132, 133, 14 S. Ct. 286, 38 L. Ed. 98.

Furthermore, in 28 USCA § 399 we find the following provision: "Where, in any suit brought in or removed from any State court to any district of the United States, the jurisdiction of the district court is based upon the diverse citizenship of the parties, and such diverse citizenship in fact existed at the time the suit was brought or removed, though defectively alleged, either party may amend at any stage of the proceedings *and in the appellate court* upon such terms as the court may impose, so as to show on the record such diverse citizenship and jurisdiction, and thereupon such suit shall be proceeded with the same as though the diverse citizenship had been fully and correctly pleaded at the inception of the suit, or, if it be a removed case, in the petition for removal." (Italics our own.)

As for the statutory amount involved, the bill for the appointment of a receiver, filed in the Delaware Chancery Court, recites that "the respondent [appellee corporation] is indebted to the complainant [appellee Maurer] in the sum of $5,000."

■ Finally, it has been held that an ancillary suit in a federal court does not depend on diverse citizenship. In Bluefields S. S. Co. v. Steele (C. C. A. 3) 184 F. 584, 587, the court said: "While an ancillary proceeding of the kind here considered will be controlled by the court before which it is prosecuted, and in that sense is an independent proceeding, its ultimate object is to aid the purpose of the original suit, and in that sense it is ancillary. Jurisdiction in such an ancillary suit therefore no more depends on diversity of citizenship than it does in a suit ancillary to an original suit pending in the same court. It depends alone on the existence of an original suit in one court which may properly be aided by proceedings in another court. It is unnecessary to refer to cases in which the federal courts have appointed receivers ancillary to receiverships in other jurisdictions without regard to the citizenship of the parties. There are many of them."

■ But, argues the appellant, "assuming that the amendments made to the original bill were sufficient to confer jurisdiction upon the District Court, as a federal court or as a court of equity, to appoint ancillary receivers, the amendments cannot be given retro-

spective effect in the sense that they must be deemed to have been on file at 4:45 P. M. on April 19, 1933, prior to the filing of the state suit nine minutes later."

The books are against this contention of the appellant's.

In Fleischmann Co. v. United States, 270 U. S. 349, 359, 46 S. Ct. 284, 289, 70 L. Ed. 624, the court said: "It is clear that the amended declaration and petitions did not set up new causes of action, but merely supplemented by appropriate allegations the defective statements of the rights which had existed when the original declaration and petitions were filed; and that the amendments when made related back, by operation of law, to the dates on which the original suit was brought and the original petitions filed. U. S. ex rel. Texas Cement Co. v. McCord, 233 U. S. 157, 164, 34 S. Ct. 550, 58 L. Ed. 893; Illinois Surety Co. v. U. S. to Use of Peeler, 240 U. S. 214, 222, 36 S. Ct. 321, 60 L. Ed. 609."

In Columbia Valley R. Co. v. Portland & S. Ry. Co., 162 F. 603, 609, the late Judge Gilbert, of this court, observed: "The theory of chancery practice is that the original bill always remains in force and effect except as to portions thereof which are struck out by amendment, and that amendments averring additional facts may be filed and added thereto as to matters which occurred before the filing of the original bill; but that, when so filed, the amendments relate back to the time of filing the original bill and are incorporated therein, and that all matters occurring subsequent to the filing of the original bill affecting the complainant's right to relief must be presented by a supplemental bill. But in the present case, the appellant did not file amendments to its original bill. Its second amended bill is a new bill setting forth all the facts on which the appellant's alleged right to relief depends."

In the instant case, the original bill recited that an exemplified copy of the bill of complaint in the Delaware action, a certified copy of the order of the Delaware court appointing the petitioners as receivers, and other papers, were being forwarded to the jurisdiction of the court below, and would be presented, if permitted, to that court.

Furthermore, in the instant case, certain amendments to the bill of complaint were presented to the court below by the three petitioning primary receivers, Arthur G. Logan, Carl M. Hansen, and George de Bienzille Keim, with the following statement: "That said bill heretofore filed, together with the above amendments thereto, shall read as follows." See, also, Armstrong Cork Co. v. Merchants' Refrigerating Co. (C. C. A. 8) 184 F. 199, 205, and Hoover Co. v. Sesquicentennial Exhibition Ass'n (D. C.) 26 F.(2d) 821, 822.

We therefore conclude that the bill of complaint, at least as amended, supplied all the necessary facts upon which ancillary receivers could be appointed, and, when considered in the light of the admissions and consent of the appellee corporation, conferred jurisdiction upon the court below, both as an equity and a federal court.

■ Accordingly, we now advance to the main question presented by this appeal; namely, Whether the court below or the superior court of the state of California in and for the county of Los Angeles first acquired jurisdiction of the property and affairs of the appellee corporation in the jurisdiction of the court below.

The rule as to priority of jurisdiction in cases of this kind was succinctly stated by the late Mr. Chief Justice Taft in the case of Harkin v. Brundage, 276 U. S. 36, 43, 44, 48 S. Ct. 268, 271, 72 L. Ed. 457: "The principle which should govern in a conflict of jurisdiction like this has been a number of times stated by this court. As between two courts of concurrent and co-ordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do so, because it may not have obtained prior physical possession by its receiver of the property in dispute; but where the jurisdiction is not the same or concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction. Moran v. Sturges, 154 U. S. 256, 283, 284, 14 S. Ct. 1019, 38 L. Ed. 981; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; Wabash Railroad v. Adelbert College, 208 U. S. 38, 54, 28 S. Ct. 182, 52 L. Ed. 379; Farmers' Loan & Trust Co. v. Lake Street Railroad Co., 177 U. S. 51, 61, 20 S. Ct. 564, 44 L. Ed. 667, and Adams v. Mercantile Trust Co. (C. C. A.) 66 F. 617. The difficulty in the application of the rule is in determining whether the conflicting jurisdictions are actually concurrent and the same. A doubtful question too, is whether the bill is of such a character that its filing is the taking of con-

structive possession of the property." See, also, Kline v. Burke Const. Co., 260 U. S. 226, 231, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077; McKinney v. Landon (C. C. A. 8) 209 F. 300, 306; Amusement Syndicate Co. v. El Paso Land Improve. Co. (D. C.) 251 F. 345, 347; Brown v. Pacific Mut. Life Ins. Co. (C. C. A. 4) 62 F.(2d) 711, 714; Christian v. R. Hoe & Co. (C. C. A. 2) 63 F. (2d) 221, 223; Newberry v. Davison Chemical Co. (C. C. A. 4) 65 F.(2d) 724, 728.

We therefore must next address our attention to the question of whether or not, in the instant case, the court below and the state court had, in the language of Harkin v. Brundage; "concurrent and co-ordinate jurisdiction."

In this inquiry it will first be necessary to examine the California statute providing "for proceedings against and liquidation of delinquent insurance corporations and associations." That statute is Act 3739, Deering's General Laws of California, 1923, Part One, pages 1372–1376, approved April 30, 1919, Stats. 1919, p. 265, as amended in 1921, Stats. 1921, p. 1017. The pertinent sections of that act follow:

"§ 2. *Action by Insurance Commissioner for Order to Conduct Business of Domestic Corporation.* Whenever any domestic corporation [here follow eight conditions that need not by us be set forth], the insurance commissioner may apply to the superior court, or any judge thereof, in the county in which the principal office of such corporation is located for an order directing such corporation to show cause why the insurance commissioner should not take possession of its property, and conduct its business, and for such other relief as the nature of the case and the interest of its policy-holders, creditors, and the public may require.

"§ 2a. *Proceedings Against Delinquent Insurance Company.* Whenever it shall appear to the insurance commissioner that any person or corporation has committed any of the acts set forth in paragraph two of this act, and that any officer or attorney in fact of such corporation has embezzled or sequestered or wrongfully diverted to his or its own benefit any of the moneys, assets or securities of such corporation, and that irreparable loss and injury to the property and business of such corporation has or may occur unless the insurance commissioner take immediate charge of the property, business and affairs of such corporation, then and thereupon the insurance commissioner shall forthwith, without notice and before applying to the court

for any order as herein provided, seize and take possession of the property and business of such person or corporation, its books, records and accounts and the offices and premises occupied by such corporation for the transaction of its business, and retain possession of the same subject to the order of the court; and for such purpose the insurance commissioner may require the aid of all peace officers to enforce such seizure and possession by the insurance commissioner.

"Thereupon the insurance commissioner shall apply to the superior court, or any judge thereof, in the county in which the principal office of such corporation is located for the order provided for in section two of this act, and thereafter shall proceed in such application and in the disposition of the property, business and affairs of said corporation as hereinafter in this act provided.

"§ 3. *Injunction by Court.* On such application, or at any time thereafter, such court may, in its discretion, issue an injunction restraining such corporation from the transaction of its business or disposition of its property until the further order of the court. On the return of such order to show cause, and after a full hearing, the court shall either deny the application or direct such insurance commissioner, or his successor in office, forthwith to take possession of the property and conduct the business of such corporation, and retain such possession and conduct such business until, on the application either of the insurance commissioner, or of such corporation, it shall, after a like hearing, appear to the court that the ground for such order directing the insurance commissioner to take possession has been removed and that the corporation can properly resume possession of its property and the conduct of its business.

"§ 5. *Action by Insurance Commissioner in Case of Foreign Corporations.* Whenever any of the grounds of jurisdiction over domestic corporations specified in subdivisions (a), (b), (c), (d), (e), (f) and (g) of section two of this act exist or arise with reference to any corporation incorporated by or existing under the government or laws of any country outside of the United States and authorized to transact the business of insurance and having assets in this state; or whenever any foreign corporation so authorized and having assets in this state has been placed in the hands of a receiver or had its property sequestrated in its domiciliary state or country or in any other state or country, the insurance commissioner may apply to the superior

court or any judge thereof in the county in which such corporation has its principal office for the transaction of business in this state, for an order directing such corporation to show cause why the insurance commissioner should not take possession of its property and conserve its assets for the benefit of its creditors, and for such other relief as the nature of the case and the interests of its policyholders, creditors, stockholders or the public may require.

"§ 6. *Injunction by Court.* On such application, or at any time thereafter, such court may, in its discretion, issue an injunction restraining such corporation and its officers, agents and employees from the transaction of its business or disposition of its property until the further order of the court. On the return of such order to show cause, and after a full hearing the court shall either deny the application or direct the insurance commissioner forthwith to take possession of the property and conserve the assets of such corporation, and retain such possession until, on the application either of the insurance commissioner, or of such corporation, it shall, after a like hearing, appear to the court that the ground for such order directing the insurance commissioner to take possession has been removed and that the corporation can properly resume possession of its property and conduct its business. If, on such application, the court shall direct the insurance commissioner to take possession of the property and conserve the assets of such corporation, the rights and duties of the said insurance commissioner with reference to such corporation and its said assets *shall be those heretofore exercised by and imposed upon ancillary receivers* of foreign corporations in this state. (Italics our own.)

"§ 10. *Commissioner has Powers of Receiver.* In all cases arising under the provisions of this act where not otherwise provided the powers and duties of the insurance commissioner with relation to the property and assets and business of any corporation placed under his control *shall be those heretofore exercised by and imposed upon receivers* of corporations within this state." (Italics our own.)

From the foregoing, it will be seen that the insurance commissioner is empowered to bring suit in the superior court. The appellant argues that "the only state statute conferring powers and imposing duties upon a state agency in the matter of the liquidation of an insurance company in an insolvent or hazardous financial condition directs that the Insurance Commissioner proceed in the state court," and that "suit by the State of California, through its Insurance Commissioner, the appellant herein, could not have been instituted in the District Court." The appellees seem to concur in this view, for in their brief they state: "The fact that the State proceedings could have been brought only in the State Court and could not, therefore, have been removed to the Federal Court, as pointed out on Page 24 of appellant's brief, has no significance, since both courts were seeking to exercise jurisdiction over the same subject matter in similar proceedings for the same end."

This, indeed, seems to be the law. Construing another California statute, the California State Arbitration Act, title 10, part 3, of the California Code of Civil Procedure, which, at section 1282, provides that: "A party aggrieved by the failure ❝ ❞ ❝ of another to perform under an agreement in writing providing for arbitration may petition any superior court of the county or city and county where either party resides," etc., in California Prune & Apricot Growers' Ass'n v. Catz Amer. Co., 60 F.(2d) 788, 790, 85 A. L. R. 1117, we said: "The act itself discloses that it was the intention of the Legislature to provide a procedure peculiarly adaptable to the state courts of California; and, in view of many of the provisions of the act, it would be difficult if not impossible to harmonize it with the federal law and procedure."

But, though it be conceded that the appellant could not have brought his suit in the court below, it by no means necessarily follows that the jurisdictions of the federal and state courts are not concurrent in this matter.

The appellant, of course, stoutly maintains that the two jurisdictions are neither coordinate nor concurrent. One of the cases it cites in support of its position is Welch v. Union Cas. Ins. Co. (D. C.) 238 F. 968, 975. The appellant, however, seems to have overlooked the fact that the above case was specifically reversed by the Circuit Court of Appeals for the Third Circuit, in the leading case of O'Neil v. Welch, 245 F. 261, 262–264, 265, 269.

An examination of the facts of that case discloses that it is on all fours with the instant controversy. A statute of Pennsylvania provided that "whenever any domestic insurance company ❋ ❋ ❋ (a) is insolvent," etc., "the Insurance Commissioner may, through the Attorney General, apply

to the Court of Common Pleas of Dauphin County, or to the Court of any county in which the principal office of such corporation is located, for an order directing such corporation to show cause why the Insurance Commissioner should not take possession of its property," etc. From this point we quote directly from the opinion:

"On November 15, 1916, the Insurance Commissioner of the Commonwealth of Pennsylvania, by the Attorney General, filed a suggestion in the Court of Common Pleas of Dauphin County * * * and obtained a rule directed to The Union Casualty Insurance Company * * * 'to show cause why the Insurance Commissioner should not take possession.' * * *

"The rule was made returnable November 29, 1916. On that day the Insurance Company appeared and filed its answer to the suggestion, with a prayer that the rule be continued to December 19, 1916. The continuance was granted. On December 18, 1916, the day before the return day of the rule, Homer G. Welch, a citizen of New Jersey, * * * filed a stockholders' bill in the District-Court of the United States * * * alleging solvency of the Insurance Company and praying the appointment of a receiver for the conservation of its property pending the adjustment of its difficulties. Although the Insurance Company had already appeared and answered in the proceeding in the State court, it voluntarily appeared in the Federal court and filed an answer concurrently with the bill, admitting its allegations; whereupon the Federal court appointed a receiver. The receiver immediately took possession of all assets of the Insurance Company within his reach, and served certified copies of his appointment upon the Attorney General of the Commonwealth of Pennsylvania and upon the judges of the State court."

From the foregoing statement it will be seen that the Pennsylvania statute was even more specific than the California law, as to the court in which the Attorney General might bring suit; namely, a particular court in a particular county. Yet in the face of that specific statute Judge Woolley had this to say on the subject of the concurrent jurisdiction: "The starting point in this controversy, therefore, is the jurisdiction of the two courts. It cannot be doubted that the Federal court, in the exercise of its general equity jurisdiction, has power to appoint a receiver on a stockholder's bill, determine a corporation's solvency and distribute its assets, and that no

State statute can impair or destroy that power. It is equally clear that the State court has power, in the exercise of its special jurisdiction, to determine on the Attorney General's suggestion the solvency of an insurance corporation, deliver its property *to an officer with the function of a receiver,* and distribute its assets; and that there is no Federal statute which impairs or destroys that power. Therefore, in considering the one question of priority of jurisdiction, we assume that the Federal and State courts named have concurrent jurisdiction in the appointment of receivers and in administering the affairs of insolvent corporations, *though invoked and proceeded with in different ways.*" (Italics our own.)

Accordingly, the court held: "We are therefore of opinion that the State court acquired jurisdiction not only of the corporation but of its property upon the inception of the proceeding, and, being first to acquire jurisdiction, is entitled to retain it until the State has wrought its function and until the jurisdiction invoked has been exhausted."

Another case in point is Ward v. Foulkrod (C. C. A. 3) 264 F. 627, 633, in which the opinion was likewise written by Judge Woolley. In August, 1918, Kidwell, a stockholder of Badenhausen Company, a Delaware corporation, filed a bill in the Court of Chancery of the state of Delaware, alleging insolvency of the corporation and praying the appointment of receivers. After service, the defendant appeared, and, by its answer, denied insolvency.

In January, 1919, with the action in the state court pending, Andrew Wheeler and others (citizens of Pennsylvania), creditors of the company, filed a bill against that corporation in a District Court of the United States in Pennsylvania, alleging that the corporation was "unable to provide for the payment of its obligations now maturing or about to mature," showing generally a situation requiring a receivership to conserve its assets, and praying the appointment of a receiver. Concurrently with the bill, the Badenhausen Company filed its answer, confessing all the allegations of the bill. Thereupon the District Court appointed a receiver.

Ancillary to the receivership thus created by the federal court in Pennsylvania, receivers were appointed by a federal court in New Jersey.

In February, 1919, the Chancery Court in Delaware entered a decree holding the corporation "insolvent in that it is unable to pay its debts when and as they become due," and appointed receivers. After qualifying, the

state receivers, on March 4, 1919, filed a petition in the Pennsylvania federal court, praying that the latter annul its order appointing a receiver, etc.

With the petition of the state receivers for the annulment of the appointment of the federal receiver pending in the District Court, Badenhausen Company appealed from the chancery decree that had declared the company to be insolvent. The Supreme Court of Delaware affirmed the decree. Badenhausen Co. v. Kidwell, 12 Del. Ch. 370, 107 A. 297.

Other proceedings, with which we are not here concerned, followed: "From this recital," said Judge Woolley, "it is clear that there is not that difference in the actions pending in the two courts—if the jurisdiction thereof be considered as concurrent—which, under the decisions, raises a valid conflict of jurisdiction, and confers priority of jurisdiction on that court which has first seized the property, entitling it to the retention thereof until the conclusion of the litigation."

Though, as we have seen, the complainant in the state action was a stockholder and the complainants in the federal suit were creditors, the court emphasized that the lack of identity of parties was not crucial in determining the concurrence of jurisdiction. Continuing, Judge Woolley said:

"In these actions, the parties are the same in the sense that each has asked for and has been granted the same relief concerning the same subject matter. The subject matter is precisely the same, being assets and property of the same corporation. The ground of action, namely, the corporation's inability presently to pay its debts, is the same; and the legal effect of that condition on its solvency, however differently it may have been regarded at the commencement of the two suits, is now the same, being established by the decree of the Supreme Court of the State of Delaware, which is binding alike upon the courts of that State and of the United States under the full faith and credit provision of the Federal Constitution. * * *

"It appears to us, therefore, that the actions in the two courts are such as clearly come within the rule that the court in which the first was brought acquired jurisdiction over its subject matter, though possession of its subject matter was first acquired through judicial seizure by the other court in an action subsequently brought, and that the District Court, on being apprised of the prior jurisdiction in the State court, would, on appropriate proceedings, recognize its infringement of that jurisdiction and surrender its own."

So here. The parties in the two suits asked for the same relief, and in the federal court that relief—the appointment of a receiver—had been granted. In the state court, the order purported to authorize the appellant to take immediate possession of the corporate property, although sections 3 and 6, supra, of the act would seem to require "a full hearing" to be had before the insurance commissioner is placed into possession.

Furthermore, the grounds of the action were similar; namely, the bill in the state court alleged that the "company was in such condition that its further transaction of business in California would be hazardous," and asked that the "Commissioner be appointed to liquidate the business."

The bill in the court below, as amended, alleged, by reference to the annexed bill filed in the Delaware Chancery Court, that the corporation was "insolvent."

Finally, the bill in the court below, besides praying for the appointment of ancillary receivers, asked, as we have seen, that the "court fully administer" the property "and determine the respective rights, liens and priorities" of the corporation's creditors, "and after this court shall have taken such steps with respect to respondent's said property and assets as it shall deem meet and proper in the interests of the creditors within the jurisdiction of this court, that it deliver or cause to be delivered to your petitioners herein the net balance of said property and assets to be remitted to and administered by said Chancery Court of the State of Delaware."

This, of course, is tantamount to the "liquidation" asked for by the appellant in the state court.

Therefore, since, "in these actions, the parties are the same in the sense that each has asked for and has been granted the same relief concerning the same subject-matter," since "the subject matter is precisely the same, being assets and property of the same corporation," and "since the ground of action, namely, the corporation's inability to pay its debts, is the same," we believe that the instant case is well within the principle announced in the O'Neil and Foulkrod Cases, supra.

Both the above cases have been cited with apparent approval by the Supreme Court, in Lion Bonding Co. v. Karatz, 262

244

U. S. 77, 86 note 5, 43 S. Ct. 480, 67 L. Ed. 871. As we have already stated, the same two decisions have been cited with approval by this court, in Mitchell v. Lay, supra. We believe that they correctly state the law.

Since, therefore, the court below and the state court had concurrent and co-ordinate jurisdiction of the subject-matter, we hold that, under the rule enunciated in Harkin v. Brundage, supra, the court below, which first obtained "jurisdiction * * * by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do so, because it may not have obtained prior physical possession by its receiver of the property in dispute."

Accordingly, the orders of the court below denying the appellant's motion to annul the order appointing the ancillary receivers, and denying the appellant's motion for a rehearing, should be affirmed.