**BALLOU et al. v. DAVIS et al.**

No. 5275.

Circuit Court of Appeals, Seventh Circuit.

Jan. 23, 1935.

Rehearing Denied Feb. 19, 1935.

George F. Callaghan and E. R. Elliott, both of Chicago, Ill. (Bernhardt Frank, of Chicago, Ill., of counsel), for appellants.

Roy O. West, Percy B. Eckhart, William M. Klein, and Lewis C. Jesseph, all of Chicago, Ill., for appellee receiver.

Fred P. Carr, of Des Moines, Iowa, and Robert A. Frantz and Arthur J. Jennett, both of Chicago, Ill., for appellee Central Life.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellants, who were members of a policyholders' protective committee, attack the validity of the order of the District Court of December 28, 1933, directing a transfer of the Illinois Life Insurance Company's assets to the Central Life Assurance Society, pursuant to the provisions of a reinsurance contract previously executed. They assail the reinsurance contract on the following grounds:

(1) The reinsurance contract, not having been submitted to and approved by the Illinois Insurance Department as required by the Illinois statute (Smith-Hurd Ann. St. Ill. c. 73, § 272), is ineffective.

(2) The Central Assurance Society could not, under sections 9116 and 9118 of the Iowa statutes (Code 1931), enter into a reinsurance contract with a company (insolvent) not authorized to do business in Iowa and could not act as a trustee or manager of Illinois Life funds as required by the reinsurance contract.

(3) The reinsurance contract does not in fact, until 1948, reinsure Illinois Life policy-

holders. It is therefore a fraud on the policyholders, and its provisions are unfair to them, because premiums paid by them to a nonresident company are taxable and the Central Life Assurance Society is financially embarrassed.

(4) The District Court improperly exercised jurisdiction, as the Illinois Insurance Department alone has the power to appoint a receiver and administer the assets of insolvent Illinois insurance companies.

Appellees, in addition to controverting all appellants' contentions, contend that the order appealed from is not appealable.

The Facts. Two petitions seeking the appointment of a receiver of the Illinois Life Insurance Company (a company of 70,000 policyholders) to conserve its assets were filed in the District Court in November, 1932, one by a stockholder and the other by a policyholder. These petitions were consolidated, and Mr. Abel Davis was appointed receiver. The following month appellants were given leave to intervene. In June, 1933, the District Court appointed an advisory board of three disinterested, well-qualified, and widely-experienced members (Mr. William H. Thompson of Indianapolis, Indiana, Mr. Sam T. Swansen of Milwaukee, and Mr. Thomas L. Marshall of Chicago), who were directed, in cooperation with the receiver and the Illinois insurance commissioner, to report a plan of reinsurance. This board held open meetings on seven different days when the proponents of various plans were heard and the merits of the respective plans discussed. A stenographic record of the proceedings before the board is incorporated in the record. There was complete cooperation between Mr. Palmer, Director of Insurance of the State of Illinois, the receiver, and the advisory board. Their efforts were directed to the securing of a strong, reliable insurance company which would reinsure policyholders of the Illinois Life upon terms that fairly and adequately protected them. The advisory board's report set forth the three classes of plans considered and recommended the adoption of the Central Life's proposal. On July 22, 1933, the court adopted the board's findings and approved the reinsurance contract with the Central Life. The court also referred the matter of appraisal of the cash liquidating value of the Illinois Life's assets to a master. On August 7, 1933, the receiver reported to the District Court that the proper Iowa state officials had approved the reinsurance contract, which by its terms was subject to such approval.

The appellants' charge that the reinsurance contract is a fraud on the policyholders and is unfair to them is unsupported by a shred of evidence. Equally unsubstantiated and reckless is the assertion that the Central Life Assurance Society is financially embarrassed. The evidence completely and conclusively establishes the contrary.

The reinsuring company, the Central Life Assurance Society, was examined by the state insurance departments of Iowa, Minnesota, and Nebraska shortly before the reinsurance contract was drafted. These examining bodies, in their report, stated:

"As shown by this examination, the Central Life Assurance Company (mutual) is in excellent financial condition with reserves and surplus that guarantee the adequate protection of its policyholders.

"The operation of the Society is carried on efficiently and economically. The application of the organization, from clerks to officers, is noteworthy, and as a result, the corporation is operating as one harmonious unit for the protection and safety of the policyholders.

"The examination was made by * * * representing the Iowa Department and the undersigned." ("And it is signed by H. J. Van Aken, Examiner in Charge of Insurance Department of Iowa, and by Walter B. Keiter, Examiner of the Department of (Insurance) Minnesota, and Harry B. Aden, Examiner Insurance Department of Nebraska.")

The advisory board made an independent investigation of the reinsuring company, as well as a study of the contract of reinsurance. We quote from its report:

"Substantially all of the proposals made were discussed with both the Receiver and the Director of Insurance, who placed at the disposal of your Advisory Board competent actuarial assistance. * * *

"After a careful canvassing of all of the bids submitted, your Board has decided to and does recommend the acceptance of the proposal of the Central Life Assurance Society (Mutual) of Des Moines, Iowa. We have investigated carefully the standing, capability and integrity of its officers, the character of its business and assets and find them to be of a high grade. It had outstanding as of the close of 1932, approximately $174,000,000 of insurance, with admitted assets of $38,826,542. The salaries of its officers

are moderate. Its business is economically and capably administered and it has a high standing in its own State and elsewhere where it does business. An examination just completed by the insurance department of three States confirms the above."

The Director of Insurance of the State of Illinois likewise reviewed the proposed reinsurance contract with the result that he, too, authorized the sending of a letter to all policyholders of the Illinois Life, the material portions of which are as follows:

"This Department was requested by Judge Wilkerson of the United States District Court in Chicago and by Abel Davis, Receiver of the Illinois Life Insurance Company, to take part in the hearings which have resulted in the preparation of the reinsurance contract between Central Life Assurance Society (Mutual) of Des Moines, Iowa, and Abel Davis, Receiver of the Illinois Life Insurance Company. * * *

"In the opinion of this Department the contract which has received the approval of the United States District Court secures to the policyholders of the Illinois Life Insurance Company all benefits possible under the circumstances. The excellent reputation and standing of the reinsuring company and the safeguards to your rights contained in the contract, we believe warrant assurance that your interests will be fully protected.

"Believing that the policyholders of the Illinois Life are entitled to know how this Department regards the transaction, we are permitting the reinsuring company to send this letter to all policyholders, with the suggestion that in our opinion they may safely maintain their policies in force by the prompt payment of premiums to the Central Life Assurance Society (Mutual) in order to secure the maximum benefit under such policies.

"Ernest Palmer, Director of Insurance, State of Illinois."

The fairness of the plan and the success of those who originated and executed this unique but highly commendable method of handling embarrassed life insurance affairs are further established by creditors other than policyholders. In the case of Daniel et al. v. Layton et al., 75 F.(2d) 135, decided by this court this day, the reinsurance contract was attacked by general creditors because, so it was argued, it was relatively too favorable to the policyholders. It was also there argued that the expenses of receivership should be borne entirely by the policyholders as they were the favored beneficiaries of the labors of the receiver and his advisors.

■ Objections (1) and (4) may be considered together. The reinsurance contract was not only submitted to the Illinois Insurance Department and approved by it, but the Illinois Insurance Department at all times rendered helpful assistance to the receiver in actuarial and many other matters. There is likewise no merit in the contention that the District Court improperly assumed jurisdiction of the cause, as the Illinois Insurance Department had the sole power to appoint the receiver. The Illinois Director of Insurance might have acted, it is true. He was satisfied with the work of the receiver appointed in the Federal court. Until the Director acted, until he took steps in the state court to name a receiver, the jurisdiction of the Federal court, upon the facts disclosed by the two bills which were filed, was clear.[1] Whether the jurisdiction of the Federal court would have been defeated by the Director's naming a receiver, we need not determine. Serious questions would be presented, had such a situation arisen. We think the Director wisely concluded that this was not a question of authority, or the formal exercise of authority, but one which involved the welfare of 70,000 policyholders whose welfare was the only objective he was interested in. The results very strongly justify the course which he followed in working with the receiver and the advisory board.

■ Appellants' other objections will be disposed of without much discussion. Their claim that the Central Life Assurance Society was not authorized to reinsure the policyholders of Illinois Life is refuted by the showing that the reinsurance contract, by its terms, necessitated the approval of the Insurance Commissioner of the State of Iowa. The approval was given.

Appellants argue that the Central Life Assurance Society was prohibited by section 9116, chapter 409, Iowa Code, from lawfully executing this reinsurance contract. An examination of sections 9105 to 9116, inclusive, demonstrates conclusively that reinsurance contracts were not prohibited in Iowa when lawfully undertaken and approved by the

---

[1] Mitchell v. Maurer, 69 F.(2d) 233 (C. C. A. 9); Commonwealth of Pennsylvania v. Williams, 72 F.(2d) 509 (C. C. A. 3); O'Neil v. Welch, 245 F. 261 (C. C. A. 3); Leadville Coal Co. v. McCreery, 141 U. S. 475, 12 S. Ct. 28, 35 L. Ed. 824.

Insurance Commissioner. In fact, there is implied if not express authority for consolidations and reinsurance, provided the course provided in sections 9105 to 9114, inclusive, be followed.

Material portions of Section 9105 read as follows:

*"Life companies—consolidation and reinsurance.* No company organized under the laws of this state to do the business of life insurance, either on the stock, mutual, stipulated premium, or assessment plan, shall consolidate with any other company or reinsure its risks, or any part thereof, with any other company, or assume or reinsure the whole or any part of the risks of any other company, except as hereinafter provided \* \* \*."

The object of section 9116, upon which appellants rely, was to preclude reinsurance or reorganizations by companies through private contract which were not supervised and approved by the proper Iowa state officials.

The objection that the reinsurance contract was not approved by the Illinois Insurance Department is refuted by the letter, part of which we have quoted.

The reinsurance contract here under attack was approved by approximately 95% of the policyholders. Appellants number twenty out of a total of 70,000. We have found no evidence which would furnish a semblance of support for appellants' criticism.

In conclusion it may be observed that we have at times criticized equity receiverships which have been unduly prolonged and expensively conducted without satisfactory results. Prompted by the same motive, we approve and commend receiverships which have been efficiently conducted with vigor and with satisfactory results. The present case is of the latter class.

This appeal is one which calls for the application of 28 USCA § 878, which reads:

"Where, upon a writ of error, judgment is affirmed in the Supreme Court or a circuit court of appeals, the court shall adjudge to the respondents in error just damages for his delay, and single or double costs."

Construing this section the Supreme Court has held that this section applies to appeals in equity suits as well as to writs of error in actions at law; that damages may be assessed against an appellant who prosecutes a frivolous appeal. This is so in cases where no money damages are awarded in the District Court. Gibbs v. Diekma, 131 U. S. clxxxvi Appx., 26 L. Ed. 177; Wagner Co. v. Lyndon, 262 U. S. 226, 43 S. Ct. 589, 67 L. Ed. 961; Slaker v. O'Connor, 278 U. S. 188, 49 S. Ct. 158, 73 L. Ed. 258; Roe v. Kansas, etc., 278 U. S. 191, 49 S. Ct. 160, 73 L. Ed. 259; Perkins v. Fourniquet, 14 How. 330, 14 L. Ed. 441.

It is our opinion that the instant appeal falls within the class of frivolous appeals (delay being the object) for which appellants should pay damages.

The decree is affirmed. Appellants in addition to being taxed the ordinary costs of the appeal shall pay to appellees as damages for delay the sum of $250.