## COMMONWEALTH OF PENNSYLVANIA
### v. WILLIAMS et al.
### No. 5238.

Circuit Court of Appeals, Third Circuit.
July 24, 1934.

Wm. A. Schnader, Atty. Gen., and Harold D. Saylor, Dep. Atty. Gen., for the Commonwealth of Pennsylvania.

Gordon A. Block, of Philadelphia, Pa. (Wolf, Block, Schorr & Solis-Cohen, Ladner & Ladner, and Bernheimer & Sundheim, all of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of the District Court dismissing the petition of the commonwealth of Pennsylvania, wherein it prayed the court to direct the receivers, appointed by it, of the Mortgage Building & Loan Association, hereinafter called the association, to deliver over to the secretary of

banking of Pennsylvania. all the assets and records of the association held by them.

This was a stockholder's bill filed against the association for the appointment of receivers by Edward B. Elson, a resident of the state of New York, who owned stock in the association, to the amount of $31,000. The bill alleged that the association was then, and for a long time had been, insolvent, and that the real, actual, and fair value of its assets was far less than its liability to stockholders on dues paid in, together with its general indebtedness; that the association had stopped making loans or collecting dues; and that, "unless its affairs should be liquidated and its assets distributed under the equitable and impartial supervision of a court of competent jurisdiction," immediate and irreparable damage would be suffered. It therefore prayed for the appointment of receivers.

The association filed an answer in which it admitted its insolvency and joined in the prayer of the plaintiff for the appointment of receivers. They were appointed and took over the assets of the association. The commonwealth of Pennsylvania intervened and filed a petition, and, as above stated, prayed that the assets of the association be delivered to the secretary of banking of Pennsylvania. The court denied the prayer and entered an order dismissing the petition. From this order the commonwealth appealed.

Two questions arise: (1) Did the District Court have jurisdiction and consequent power to appoint receivers? (2) If it had, did it abuse its discretion in appointing them?

The District Court derives its power from the Constitution and from Congress and not from the commonwealth. Article 3, section 2, of the Constitution, provides that: "The judicial Power shall extend * * * to Controversies * * * between citizens of different States." Congress, pursuant to this authority, has provided that District Courts shall have original jurisdiction of all suits of a civil nature at common law or in equity, where the matter in controversy exceeds, exclusive of costs and interest, the sum or value of $3,000 and is between citizens of different states. Section 24, Judicial Code (28 USCA § 41). This is the source of the jurisdiction and power of the District Court in this case.

■■ While sitting in a state as a court of the United States, the federal court accepts and gives effect to the laws of the state, so far as they do not affect its jurisdiction and the rights of nonresident creditors. Yet it exercises powers independent of the state. A state cannot take away the plenary power of the federal courts given to them by Congress by conferring exclusive jurisdiction of such controversy upon its own courts and administrative bodies, by prescribing exclusive methods of commencing or conducting litigation, by prohibiting the seizure of the subject of the litigation during its pendency, or by any other means. National Surety Co. v. State Bank of Humboldt (C. C. A.) 120 F. 593, 602, 61 L. R. A. 394; Morrill et al. v. American Reserve Bond Co. (C. C.) 151 F. 305, 313; O'Neil v. Welch (C. C. A.) 245 F. 261, 265; Leadville Coal Co. v. McCreery, 141 U. S. 475, 477, 12 S. Ct. 28, 35 L. Ed. 824.

In the case of National Surety Co. v. State Bank, supra, Judge Sanborn, speaking for the Circuit Court of Appeals for the Eighth Circuit, said: "When the controversy which this bill discloses arose between these citizens of different states, and was presented to the Circuit Court of the United States, that court had jurisdiction to hear and determine it, and the appellants had the legal right to the opinion and the judgment of that court upon the questions which it presented. This right and this jurisdiction were not conditioned by the fact that the complainants *had or had not like rights or remedies in the state courts,* or by the fact that those courts had or had not concurrent jurisdiction. Indeed, this right and this jurisdiction were provided by the Constitution, and granted by the acts of Congress, for the express purpose of enabling citizens of different states to escape from an adjudication of their rights by state courts which had concurrent jurisdiction to grant the relief and to administer the remedies which they were seeking in the national courts. The rights of these appellants to their hearing and decree in the federal court, and the jurisdiction of that court to determine their controversy, were independent of state legislation. The state of Nebraska did not grant, and it could not revoke or impair, that right or that jurisdiction."

In the Morrill Case, supra, Judge Sanborn further said: "A federal court sitting in equity has the plenary jurisdiction of the English Court of Chancery, and one of the inherent powers of each court is to take and to hold by its own hands, by its receivers, the control and the possession of mortgaged, pledged, and trust property during the pendency of suits concerning it in those courts whenever in the exercise of a wise judicial discretion these courts are of the opinion that the most speedy and perfect administration of justice and the rights of the parties inter-

ested in the property will be best secured by such action. The statutes of the state of Missouri do not by their terms, and the Legislature of that state never, intended that they should in any way limit or impair this power of the federal courts. Moreover, the power of the Circuit Courts of the United States to adjudicate claims and administer remedies in equity is vested in them as a part of the judicial power of the nation by the Constitution of the United States and the judiciary act of 1789 [1 Stat. 73], and, as it was not granted by, it may not be revoked, impaired, or limited by, the act of any state. Wherever citizens of different states lawfully invoke the jurisdiction of the federal courts to determine controversies between them which involve the requisite amounts, they have the constitutional right to the conduct of that litigation by the methods, to the administration of the remedies, and to the determination of those controversies by the independent judgments of those courts; and no state, by conferring exclusive jurisdiction of such issues upon its own courts, by prescribing exclusive methods of commencing or of conducting litigation, by prohibiting the seizure of the subject of the litigation during its pendency, or by any other means, may lawfully strike down that right or take away the plenary power of the national courts to conduct the litigation, to administer their remedies, and, in the exercise of their judicial discretion, to control the possession of its subject-matter during its pendency in accordance with their established rules of practice, and finally to adjudicate the claims of the parties and to enforce their judgments."

In the case of O'Neil v. Welch, supra, Judge Woolley, speaking for this court said: "It cannot be doubted that the Federal court, in the exercise of its general equity jurisdiction, has power to appoint a receiver on a stockholder's bill, determine a corporation's solvency and distribute its assets, and that no State statute can impair or destroy that power."

In that case the District Court in Pennsylvania had appointed a receiver for an insurance company, for the supervision and liquidation of which the commonwealth had provided the same general complete system that it has for building and loan associations. Judge Woolley further said: "While the two courts have concurrent jurisdiction in the sense that each has the same jurisdiction, it is the policy of the law that the jurisdiction of both shall not be concurrently invoked and exercised; hence it is a well settled rule that as between two courts having concurrent jurisdiction of the subject of an action, the court which first obtains jurisdiction has the right to proceed to its final determination without interference from the other."

In Leadville Coal Co. v. McCreery, supra, the Supreme Court said: "The circuit court takes its jurisdiction, not from the state of Ohio, but from the United States; and the extent of its jurisdiction is not determined by the laws of the state, but by those of the United States. Doubtless, while sitting in the state as a court of the United States, it accepts and gives effect to the laws of the state so far as they do not affect its jurisdiction and the rights of nonresident creditors. It nevertheless exercises powers independent of the laws of the State; and when, in pursuance of the jurisdiction conferred by the laws of the United States, it takes possession of the property of a defendant and proceeds to final decree, determining the rights of all parties to that property, its decree is not superseded and its jurisdiction ended by reason of subsequent proceedings in the courts of the state, looking to an administration of that property in accordance with the laws of the state. It would be an anomaly in legal proceedings if, after a court with full jurisdiction over property in its possession has finally determined all rights to that property, subsequent proceedings in a court of another jurisdiction could annul such decree, and disturb all rights once definitely determined. No such anomaly exists in the relative jurisdiction of state and federal courts. The latter, having once acquired full jurisdiction, and proceeded to a final determination, may rightfully proceed still further, and to an execution of that decree, irrespective of any proceedings in the courts of the state."

These cases are declaratory of the law generally, but they do not deal specifically with controversies arising over quasi public corporations. The commonwealth of Pennsylvania, in the exercise of its public policy, has provided for her quasi public corporations, including building and loan associations, a complete system for incorporation, supervision, and liquidation.

The question is as to whether or not the well-settled rule of law applies when a controversy involving a quasi public corporation, such as a building and loan association, arises between citizens of different states. The question comes to this: Is the jurisdiction of the federal court, conferred by federal

statutes in accordance with the power granted to Congress by the Constitution, ousted by the public policy of the commonwealth?

Nowhere has there been any enactment by Congress excepting controversies between citizens of different states involving the liquidation of quasi public corporations from the clear and comprehensive language conferring jurisdiction upon federal courts sitting in equity. But municipal, railroad, insurance, and banking corporations have for years been taken away from the jurisdiction of federal courts sitting in bankruptcy, and in 1932 building and loan associations were added to that list. The fact that Congress expressly removed certain quasi public corporations from the jurisdiction of federal courts sitting in bankruptcy, while it did not remove them from the jurisdiction of federal courts sitting in equity, would indicate that it did not intend to do so, and this inference is rendered more plausible and strengthened when it is recalled that those courts have, in proper cases, for a long time been assuming jurisdiction over and liquidating building and loan associations.

In discussing this subject in his opinion in the court below, Judge Welsh said:

"Finally upon this point it may be said that it is no unusual thing for federal courts to appoint receivers for building and loan associations, and wherever challenged the jurisdiction of the federal court when first invoked seems to have been upheld. See the following cases, all of which are building and loan association cases: Towle v. American Bldg. Loan & Inv. Soc., 60 F. 131 (C. C. Ill.); Sleeper v. Winkel, 122 F. 736 (C. C. E. D. Pa. 1903, Judge McPherson); American B., L. & Investment Soc. (appointed on stockholder's bill), Towle v. American Building, Loan & Investment Soc., supra; Cumberland B. & L. Ass'n (on stockholder's bill), Wilson v. Parvin, 119 F. 652 (C. C. A. 6, 1903, Judge Lurton); Interstate B. & L. Ass'n (on stockholder's bill, primary receiver appointed in C. C. N. D. Ga. 1900), Flinn v. Interstate B. & L. Ass'n, 141 F. 672 (C. C. S. C. 1905); Universal Savings & Trust Co. (on stockholder's bill), Universal Savings & Trust Co. v. Stoneburner, 113 F. 251 (C. C. A. 4, 1902); Bluegrass B. & L. Ass'n (appointed pendente lite on stockholder's bill), Powers v. Blue Grass Bldg. & Loan Ass'n, 86 F. 705 (C. C. Ky. 1898, Judge Lurton); Douglass v. Kavanaugh, * * * 90 F. 373 (C. C. A. 6); Columbia Mutual Building Ass'n (receivers actually appointed in Federal Court in March 1902), Miers v. Columbia Mutual Building &

Loan Ass'n, 157 F. 940 (C. C. S. D. of N. Y. 1907); Baltimore B. & L. Ass'n of Baltimore City (primary receiver had been appointed by this court 1900), Coltrane v. Baltimore B. & L. Ass'n of Baltimore City, 110 F. 272 (C. C. Md. 1901); National Home B. & L. Ass'n (primary receiver appointed in Southern District of Illinois), MacMurray v. Gosney, ancillary receiver, in W. D. of Pa., 106 F. 11 (C. C. W. D. Pa. 1901); New South B. & L. Ass'n, Miles v. New South B. & L. Ass'n, 111 F. 946 (C. C. E. D. La. 1900); Southern Home B. & L. Ass'n, Alexander v. Southern Home B. & L. Ass'n, 110 F. 267 (C. C. Ga. 1900); Fidelity Trust & Loan Company (receiver had not been appointed), Manorita v. Fidelity Trust & Loan Co., 101 F. 8 (C. C. S. D. Ala. 1900); Michigan Savings & Loan Ass'n (appointed in 1901 by E. D. of Mich.), Galloway v. Mich. Savings & Loan Ass'n, 206 F. 241 (C. C. A. 6, 1913); Southern B. & L. Ass'n (primary receiver in N. D. Ala.), Cooper v. Newton, 160 F. 190 (C. C. Ga. 1908); American B. & L. Ass'n (receiver had been appointed), Solomons v. American B. & L. Ass'n, 116 F. 676 (C. C. N. D. Ga. 1902)."

Our attention has been called to the learned opinion, filed June 30, 1934, of Mr. Justice Schaffer of the Supreme Court of Pennsylvania, Com. ex rel. Schnader v. Penn. General Casualty Co., 173 A. 637, 640, in which that court, for whose members personally and professionally we have the highest regard, reached the conclusion that a federal court is without jurisdiction in cases involving the liquidation of quasi public corporations because it would infringe upon the public policy of the commonwealth which has provided a complete system wherein the liquidation has been restricted to her own courts and administrative officers. This conclusion is based, not only upon the public policy of the commonwealth, but also upon the court's interpretation of certain federal court decisions. Mr. Justice Schaffer said: "As we read the decisions of the federal appellate courts, jurisdiction in situations similar to the present one has been disclaimed by those tribunals."

The following cases are cited and quoted in support of the above statement: Port Newark National Bank v. Waldron (C. C. A.) 46 F.(2d) 296, 299; O'Neil v. Welch (C. C. A.) 245 F. 261, 267; Lyon v. McKeefrey (C. C. A.) 171 F. 384, 393; Mitchell v. Lay (C. C. A.) 48 F.(2d) 79; Lee v. Edmunds (C. C. A.) 66 F.(2d) 122, 125; Bank of Bay Biscayne et al. v. Hankins et al. (C. C. A.) 42

F.(2d) 209; Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 77 L. Ed. 355, 85 A. L. R. 126. If those cases do disclaim jurisdiction over the issue here involved, that would settle the issue. In order to determine whether or not they do, it is necessary to analyze and discuss them.

From the Port Newark National Bank Case, the following is quoted: " * * " In the present case we regard the Comptroller at the time this bill was filed as having complete dominion over, and, by his bank examiner, full legal control of, the then and future operations of the bank, and that such situation might ultimately require the appointment of a receiver. Consequently, the court below, when the bill was filed, acquired no jurisdiction to shear the Comptroller of the statutory power to take the further step of appointing a receiver in case insolvency existed and the attempted sale fell through."

This case really has no bearing upon the question to be decided here or which was decided by the Supreme Court of Pennsylvania. This court held in this case that the Comptroller was in possession of the insolvent bank when the bill was presented to the court for the appointment of a receiver, and further that the contest was not between two courts of concurrent and co-ordinate jurisdiction, but between the judicial and executive branches of the same sovereignty, and, when that sovereignty had given one branch exclusive control, the other branch could not interfere and thus have "a house divided against itself."

That is not the situation in the case at bar, nor was it the situation in the case in the Supreme Court of Pennsylvania. It is true, when the commonwealth of Pennsylvania provided a complete and exclusive system for the incorporation, supervision, and liquidation of her building and loan associations, no state court, which derived its jurisdiction and power from the commonwealth, could appoint a receiver other than the one designated in the act to liquidate insolvent building and loan associations, or proceed by a method different from that provided in the statute. The judicial branch was limited by the exclusive jurisdiction and power which the sovereign commonwealth had conferred upon its executive branch.

But such is not the situation in the case at bar. This case grows out of a controversy arising between citizens of different states. United States District Courts are given jurisdiction over such controversies, and state governments cannot impair that jurisdiction.

When federal courts first exercise their jurisdiction, they can maintain it to the end of the litigation, to the exclusion of a state court having concurrent jurisdiction. That a citizen of another state may invoke the aid of a federal court sitting in Pennsylvania, and thus possess a right not enjoyed by a citizen of Pennsylvania, as Mr. Justice Schaffer observed, is no argument against the jurisdiction of the federal court in this case. National Surety Co. v. State Bank, supra; Mitchell v. Maurer (C. C. A.) 69 F.(2d) 233, 241. In the National Surety Case Judge Sanborn said: "This right and this jurisdiction were not conditioned by the fact that the complainants had or had not like rights or remedies in the state courts." It is well settled that any citizen of another state may come into Pennsylvania and bring any suit of a civil nature at common law or in equity against one of her citizens in the federal court which is closed to a citizen of Pennsylvania in the same suit. He must bring suit in the state court.

Mr. Justice Schaffer further quoted from Judge Woolley in the case of O'Neil v. Welch, as follows:

"The state engaged in this undertaking primarily for the protection of the public. Being for the public, its action is a governmental function. When in its exercise it becomes necessary to protect the public from insolvent or improperly conducted insurance companies, the state pursues a remedy prescribed by the same law that conferred the corporation's rights and defined the state's duties. Given briefly, the Insurance Commissioner, acting through the Attorney General, files in a state court a suggestion of the corporation's insolvency or unlawful conduct. In this way the state acts and in this way the state begins suit. Upon the state's suggestion the court starts a judicial inquiry by directing to the insurance company a rule to show cause why the Insurance Commissioner should not take possession of its property, and at the same time (that is at the very beginning of the suit) the court, if it wishes, lays its hand upon the company's property, and by a restraining order holds it within its control pending the inquiry.

"The jurisdiction of the state court thus invoked is a special jurisdiction conferred by statute as a part of the state's policy of insurance regulation and control. It is not conferred for the protection of corporations' policyholders and creditors alone, but for the protection of the public as well. This clearly appears by the terms of the act; it again

appears in the court's decree. In prosecuting an insurance company the state is acting for the public, and the public is in turn interested in the proceeding; though not nominally present as a party, it is nevertheless present in the person of the Attorney General."

But a reading of this opinion will disclose that the question before us was not in issue in that case. On page 264 of 245 F., Judge Woolley said: "As we view the case, it does not present questions:—whether a Federal court has power to decree the dissolution of a corporation of the Commonwealth of Pennsylvania in a proceeding in which its jurisdiction first attached; *whether a Federal court has authority to supersede and take away the general control over insurance companies vested by State statute in the Insurance Commissioner, before the Insurance Commissioner has in the exercise of his control begun proceedings in a State court.* * * * All these questions were in some measure considered in the decision and argued on appeal. As we view it, *the case presents the single question: Which court first acquired jurisdiction? No other question is in issue and no other will be decided."*

Consequently if anything was said bearing on the question before us, and we do not think there was, it was obiter dictum and was not decided. Which court first acquired jurisdiction was the only issue decided.

The opinion also quotes from Judge Gray in the case of Lyon v. McKeefrey, supra, as follows: "But the court below has clearly exhausted its jurisdiction, so far as the purposes of the original bill are concerned. That bill did not contemplate a dissolution of the corporation and a winding up of its business, indeed, the court was without jurisdiction for that purpose."

That case involved the receivership of the Iron City Trust Company, a Pennsylvania corporation engaged in the general banking business in the city of Pittsburgh, Pa. Its assets largely exceeded its liabilities, but they could not be converted into cash in time to meet its liabilities as they matured. It was alleged that its failure to meet its obligations would result in vexatious and costly litigation, would subject the assets to attachment and execution, and that they would bring much less than their fair and reasonable value, to the great prejudice of the creditors and stockholders, unless they were properly protected by the court.

On the day the bill was filed, the Iron City Trust Company filed its answer admitting the allegations of the bill, and joined in the prayer for the appointment of receivers "to the end that all creditors be paid in full, without loss and sacrifice of its assets, so as to preserve the same for its stockholders as well."

On that same day receivers were appointed who proceeded to the discharge of their duties, and in due course they paid in full all the creditors, and had left in their hands more than $2,500,000 belonging to somebody. When all the creditors were paid, that exhausted the jurisdiction of the District Court, as it did not have power to dissolve the corporation and wind up its affairs.

In the meantime, while proceedings were going on in the federal court, the Attorney General of Pennsylvania began proceedings in the court of common pleas of Dauphin county in accordance with the statute for the control and regulation of banking companies, had a decree entered dissolving the corporation, and had receivers appointed to wind up its affairs.

Mr. Justice Schaffer further quotes from Judge Gray as follows: "The defendant corporation was a creature of the laws of Pennsylvania, and by those laws the rules governing its existence were prescribed. The measure of control to be exercised over its own corporations was determinable by the law and policy of the state to which they owed their being. By the legislation here in question, the state of Pennsylvania has seen fit to subject such corporations to supervision and administrative control and has ordained the proceedings, partly administrative and partly judicial, by which the life of such corporations may be determined and their affairs wound up and liquidated. The judicial proceeding is not one that may be instituted by private parties, but by the Attorney General of the state, acting on behalf of the commonwealth and in the interest of the public. Such a proceeding is not one of which a United States court can have concurrent jurisdiction. It does not involve a controversy between private parties, whether citizens of the same state or of different states."

This refers to the special jurisdiction, partly administrative and partly judicial, to which Pennsylvania has subjected her quasi public corporations, and which can be invoked only by her special agents designated in the statute, but that does not exclude the ordinary jurisdiction of federal courts over controversies arising between citizens of different states. The opinion of Judge Woolley in O'Neil v. Welch, supra, settles that question for this court. Immediately following

the above quotation Judge Gray said: "The Supreme Court of Pennsylvania has decided, as we have seen, that such proceeding does not exclude the jurisdiction of the courts, state or federal, as regards the ordinary litigation in which the corporation as a party may be involved, growing out of controversies of a private and civil nature."

That the District Court had jurisdiction was expressly admitted by counsel representing the receiver in that case. Judge Gray said:

"No question as to the right of the court below to take jurisdiction of the cause presented to it by the bill and answer filed October 23, 1907, is here raised. In their brief the counsel for the appellant say:

" 'Our position is that for the purposes of this case we concede the jurisdiction of the circuit court and its receivers to administer this estate up until the time that all creditors had been paid in full and the rights of the complainants in the bill determined, and that the jurisdiction to this extent was not affected nor the proceedings abated by the subsequent dissolution of the corporation by the decree of the state court.' "

Consequently this case has no bearing on the question at issue.

The opinion of the Pennsylvania court also quotes from the cases of Lee v. Edmunds (C. C. A.) 66 F.(2d) 122 and Bank of Bay Biscayne et al. v. Hankins et al. (C. C.) 42 F. (2d) 209, 210. The following is from the Lee Case: "The decisions of this court have agreed with those of the Supreme Court of Florida that only in a clear case of mismanagement will a court of equity take the assets from the statutory administration. * * * Yet a court of equity in case of necessity may appoint a receiver for special property in the liquidator's hands, but only on a showing of fraud, corruption, or maladministration or other illegal action of the liquidator."

From the latter case the following is quoted: "Regardless of the terms used, it is apparent that the order in effect appoints a receiver to control the assets of the failed bank, and enjoins the comptroller from carrying on the liquidation of the institution under provisions of the laws of Florida. A bank organized under the laws of a state is a quasi public institution, and, whenever the laws of the state provide for supervision and control of the affairs of the bank by an authorized official, and also for the ultimate liquidation and distribution of its assets under his direction, in the event of its insolvency, it is a matter of grave consequence for any court to interfere. (Here follows two sentences omitted from the quotation, 'and that should be done only in a perfectly clear case. It does not appear from the record that such a case is presented here.') The laws of Florida provide an orderly method of liquidating the affairs of an insolvent state bank, in substantially the same manner that federal statutes provide for the liquidation of an insolvent national bank. * * * It is usually a matter of discretion to issue an injunction and appoint a receiver, but the exercise of jurisdiction and the entering of the order appealed from in this case appear to us to be unwarranted."

In the first place, in the Lee Case, proceedings had been begun in the state court several months before they were started in the federal court, and, in view of this fact, it is well settled that the federal court had no jurisdiction and could do nothing else than direct the federal receiver to turn over the assets to the state authorities.

In the case of Bank of Bay Biscayne the comptroller of the state had closed the bank and was liquidating it when the receiver was appointed by the federal court. Under such circumstances, the court said it was "a matter of grave consequence for any court to interfere," and then added the two significant sentences omitted from the quotation in the decision of the Supreme Court of Pennsylvania. These sentences show that in the opinion of the Fifth Circuit court the federal court does have jurisdiction in a clear case.

The Pennsylvania opinion cites the case of Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 77 L. Ed. 355, 85 A. L. R. 128, where the Supreme Court gave warning that the appointment of receivers by federal courts at the suit of a simple contract creditor where the defendant was willing to waive the irregularity and consent to the decree should not be granted loosely as a weapon of coercion or as a means of frustrating the public policy of a state, but should be invoked in the aid of equity to conserve the common fund for the benefit of the suitor with a legitimate claim and the creditors at large. This bears only on the question of discretion to be exercised by a District Judge.

The opinion of Judge Wilbur of the Circuit Court of Appeals of the Ninth Circuit in the case of Mitchell v. Lay, 48 F.(2d) 79, 83, was cited. But that case did not involve the question here in issue, as a mere reading of the opinion will show: "It would seem clear that, before the plaintiff was justified

in coming into a court of equity for the appointment of a receiver and the liquidation of the affairs of the insurance company, she should have exhausted her remedy against this special fund deposited for her benefit. *Whether, upon the ground of diversity of citizenship and in default of any judicial proceeding in the state courts, a federal court of equity might enforce the rights of a nonresident to such fund or take jurisdiction thereof, is a question not involved in this case,* for there is no claim that there has been any default or misconduct on the part of any one with reference to the deposit in question." (Italics ours.)

But Judge Wilbur did sit in a case, overlooked by Mr. Justice Schaffer, Mitchell v. Maurer (C. C. A.) 69 F.(2d) 233, in which this exact question was present.

The International Re-Insurance Corporation, a Delaware corporation, became insolvent, and on March 23, 1933, a bill for the appointment of receivers was filed in the Court of Chancery of Delaware which appointed three receivers on April 19, 1933.

On the same day at 4:45 p. m. a petition was filed in the federal court in California for the appointment of an ancillary receiver. On the same day, but 9 minutes later, a similar petition was filed in the state court of California, which issued an order restraining the insurance company from transacting business, etc. In the meantime the insurance commissioner of California suspended the right of the insurance company to transact business in California.

After several orders and counter orders had been made by both the state and federal courts, each trying to get exclusive control of the liquidation of the insolvent insurance company, the insurance commissioner of California appealed from an order made by the federal court denying his motion to vacate its order appointing receivers and from an order refusing to rehear the motion to vacate.

The state of California has provided a complete system for the liquidation of her own insurance companies. The insurance commissioner contended, and the appellees admitted, that the state statute directed that the liquidation of insolvent insurance companies proceed in the state court only, and that the insurance commissioner could not have proceeded in the federal District Court. Consequently nonresidents had a right, the choice of a federal court in which to proceed, which citizens of California did not have, but the California court treated that argument as without significance, because it held that the federal court had concurrent jurisdiction with the state court over controversies involving quasi public corporations, and was exercising that jurisdiction over the same subject-matter in similar proceedings and for the same end.

In not one of the federal cases cited or quoted in the Pennsylvania decision has the question in the case at bar, the jurisdiction of the federal court on a controversy involving quasi public corporations arising between citizens of different states, been in issue, and not a single court in those cases has pronounced upon it.

■ The appointment of the receivers in this case arose out of a controversy between the plaintiff, a citizen of the state of New York, and the association, a citizen of the commonwealth of Pennsylvania. Congress has expressly conferred jurisdiction upon federal courts to appoint receivers in equity upon a stockholder's bill in such a case, and that power cannot be taken away by state Legislatures.

■ Further, we have not been referred to a single case, by very industrious and competent counsel, which holds that in a proper case a federal court sitting in equity is without power to appoint a receiver for a building and loan association. The Attorney General, able and brilliant, virtually admits that the District Court did have jurisdiction, but ought not to have exercised it, for he says: "We are urging not that the District Court was technically without jurisdiction, but that it ought not to have exercised its jurisdiction."

If it has power, the appointment under the circumstances was a question of discretion. Having exercised that discretion, the final question before us is whether or not in so doing the District Judge abused his discretion. In order to determine that question, a brief review of the facts is necessary.

On May 7, 1932, the Nice Ball Bearing Company secured a judgment against the association for $40,000.14 in common pleas court No. 2 of Philadelphia county. This judgment was affirmed by the Supreme Court of Pennsylvania on January 16, 1933. Nice Ball Bearing Co. v. Mortgage Building & Loan Ass'n, 310 Pa. 560, 166 A. 239.

The secretary of banking of the commonwealth of Pennsylvania made an examination of the affairs of the association, and as a result he caused a hearing to be held before the Attorney General and a duly authorized representative of the department of banking,

concerning the affairs of the association, "which was then and there found to be in an unsafe and unsound condition." The secretary thereupon instructed the officers and directors of the association "to follow a definite course of action to safeguard the interests of defendant's creditors and shareholders."

On that same day the secretary wrote a letter to the president of the association in which he placed its "activities on a rigidly restricted basis," and directed it to:

"1. Accept no more dues on account of shares of stock.

"2. Return segregated dues to stockholders immediately.

"3. Credit payments by the borrowers on account of the principal of the obligations, after deducting legal interest.

"4. Pay withdrawals pro rata to all stockholders after payment of preferred claims."

And finally said: "The above instructions to be strictly adhered to until the association is again examined by this Department, which will be sometime after the first of the year."

The Nice Ball Bearing Company threatened to issue execution on its judgment, and finally filed a bill in the District Court in which it prayed the court to direct that certain United States Liberty bonds, placed in escrow with the Tradesmen's National Bank & Trust Company of Pennsylvania, to secure the surety at the time of the appeal to the Supreme Court of Pennsylvania, be turned over to it, but the court refused, and its order was affirmed by this court.

The association continued to go along and conduct business on this restricted basis while insolvent or in an unsafe and unsound condition from June 5, 1931, until the bill in this case was filed, February 9, 1933, when it was admittedly insolvent, with the interests of all persons who dealt with it or who were connected with it in jeopardy.

Under these circumstances, we cannot say that the District Judge abused his discretion in appointing receivers.

The plaintiff, who filed the bill in this case, has rights arising under the statutes and Constitution of the United States, and had the option of choosing his forum for the enforcement of those rights. Having made that choice, it was the duty of the District Court which first assumed jurisdiction to retain it

and determine those rights. It is not a question here of comity, which, in order to avoid an unseemly conflict, requires the court last assuming jurisdiction to yield. There was, however, no question as to which court, the state court or the federal court, first acquired jurisdiction. Being a question of right, it was as much the duty of the District Court to retain jurisdiction and determine the matters before it as it would have been to surrender jurisdiction if the state court had first acquired jurisdiction.

It follows that the decree must be affirmed.