**GORDON, Secretary of Banking, et al. v. WASHINGTON et al. ***

**SAME v. O'BRIEN et al.**
**Nos. 5279, 5280.**

Circuit Court of Appeals, Third Circuit.
Sept. 28, 1934.

---

*Writ of certiorari granted 55 S. Ct. 347, 79 L. Ed. ——.

578

Wm. A. Schnader, Atty. Gen., Shippen Lewis, Sp. Deputy Atty. Gen., and Joseph K. Willing, Sp. Atty., of Philadelphia, Pa., for appellants.

David Bortin and Hirschwald, Goff & Rubin, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a decree appointing receivers for two mortgage pools of the Chester County Trust Company located at West Chester, Pa. There are two cases here involving identically the same questions of law and practically the same facts. They will, therefore, be disposed of in a single opinion.

On February 14, 1933, the Secretary of Banking of the Commonwealth of Pennsylvania took "possession of the business and property" of the Chester County Trust Company, hereinafter called the Trust Company, in accordance with the provisions of the Act of Pennsylvania of June 15, 1923, P. L. 809, known as the Banking Act of 1923, as amended by Act May 5, 1927, P. L. 762 (7 PS § 1 et seq.) and the Act of May 15, 1933, P. L. 565, known as the Department of Banking Code (71 PS § 733—1 et seq.). On that day he filed a certificate of possession in his office at Harrisburg and on the following day he filed a certified copy of the certificate in the office of the prothonotary of Chester county in accordance with the requirement of the Act of June 15, 1923, which provides in section 22 (7 PS § 22) that: "When the secretary shall have duly taken possession of the business and property of a corpora-tion or person as provided in section twenty-one of this act, he shall forthwith make, under his hand and official seal, a certificate setting forth that he has so taken possession, and shall file such certificate in his office, and cause a certified copy thereof to be filed in the office of the prothonotary, who shall index the same in the judgment index under the name of the corporation or person as defendant and the name of the secretary as plaintiff."

Among the assets of the Trust Company there were two mortgage pools, consisting of groups of mortgages held by the Trust Company as trustee, against which it had issued participation certificates.

The secretary held possession of these mortgage pools from February 14 to August 25, 1933, when Laura A. Washington, a citizen of the state of Connecticut, and holder of mortgage certificates, filed a bill in equity in one mortgage pool against the secretary and his deputy as agent in possession of the Trust Company, wherein she alleged that because of the little effort made by the secretary or his deputy to collect interest and to pay bonds and taxes, irreparable damage to her and other holders of certificates would result unless receivers were appointed, and prayed for the appointment of receivers. A similar bill was filed by Mary A. O'Brien, a citizen of New Jersey, in the other mortgage pool.

On October 29, 1933, two receivers were appointed for each mortgage pool. They were authorized to hold and preserve all the assets, to collect the principal and interest, and to make quarterly reports to the court.

The receivers on September 1, 1933, demanded possession from the deputy secretary of banking, but this was refused, and on the following day on petition the court issued a rule to show cause why the deputy receiver and his two subordinates in charge should not be adjudged in contempt for such refusal. These three persons in each pool appeared before the District Court, filed an answer in the contempt proceedings, and moved the court to dismiss the bill and vacate the appointment of receivers. The court refused the motions, but entered orders amending his decrees, and made the receivers "temporary" rather than permanent. Appeals were taken from the decrees, appointing receivers, making them temporary, and refusing the motions to dismiss and vacate.

The real question upon which the determination of this case depends is whether or not the filing of the certified copy of the cer-

tificate of possession in the prothonotary's office of Chester county conferred jurisdiction on the state court. If it did, this case was erroneously decided, for of two courts, state and federal, having concurrent and co-ordinate jurisdiction of the subject of an action, that court which first obtains jurisdiction has the right to proceed to its final determination without interference from the other. O'Neil v. Welch (C. C. A.) 245 F. 261; Harkin et al. v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457. This principle of law applies not only to actions involving corporations generally, but to those involving quasi public corporations. This we held in the case of Commonwealth of Pennsylvania v. John G. Williams et al., 72 F.(2d) 509 (decided July 23, 1934), and it is unnecessary to repeat here what we said there.

The appellants say that "not only has the state officer (Secretary of Banking) long ago taken possession of the assets of the trust company, but the state law has put him in possession as 'receiver' and has subjected him to the jurisdiction of a particular state court," and therefore the United States court could not appoint receivers of the fund already in his possession. They base this contention on section 701 of the Act of May 15, 1933, P. L. 565 (71 PS § 733—701) which provides that:

"Status of secretary as receiver. Except as otherwise provided in this act, the secretary, when he has taken possession of the business and property of an institution, shall be responsible to the court in which the certificate of possession is filed, and not to any other court. His rights, powers, and duties shall be those of a general receiver appointed by any court of equity in this Commonwealth, except as such rights, powers, and duties are increased or limited by the provisions of this act. He shall be vested, in his official capacity, with all the rights, powers, and duties of such institution; with the title or the right to possession of all property to which the institution has title or the right to possession, including debts due, and liens and other security therefor; and with the institution's rights of action or redemption. This shall be so whether such property and debts due, such liens or other security therefor, or such rights of action or redemption, are held in the name of such institution, or in the name of some other corporation or person. He shall have power to execute in his name, as receiver, any instrument incident to the exercise of any power granted to or

any duty imposed upon him as receiver of such institution.

"The secretary shall be the representative of the creditors of the institution and shall be entitled, as such, to have vacated and set aside, for the benefit of the creditors, any judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance, which could have been avoided by any of the creditors, or by which one creditor is given an unlawful preference over another."

This section defines the status of the secretary as the statutory receiver of the institution and defines his rights, powers, and duties. It "subjects" him to the jurisdiction of a particular court, only in the sense that it points out the state court which shall have jurisdiction over him when it is invoked.

Judge Kirkpatrick, in commenting on this section of the statute in the case of General Baking Company v. William G. Gordon & John J. Sullivan (D. C.) 9 F. Supp. 210 (decided October 11, 1932), said: "As to the jurisdictional question raised, I am satisfied that this court has jurisdiction. The Secretary of Banking is an administrative officer. His office exists by statute. He is appointed by the governor and not by the court. He is not an equity receiver, and the mere fact that the statute provides that he shall have the rights, powers and duties of an equity receiver does not make him one, nor does the fact that the Common Pleas Courts of the state are given jurisdiction to make certain orders and decrees relating to the conduct of the liquidation and the rights in the funds does not mean that the fund is in the custody of the court. That depends entirely upon the nature of the office of the liquidating officer and the power from which he derives his authority."

Upon taking possession of the business and property of the corporation, the secretary shall forthwith make and file in his office at Harrisburg a certificate that he has taken possession and file a "certified copy thereof" in the office of the prothonotary. Counsel says that "constructive notice to the public is given, not by filing the duplicate certificate with the prothonotary, but by filing the original certificate in the Secretary's Office at Harrisburg. * * * The duplicate certificate of possession is required to be filed with the prothonotary so that there will be a definite act marking the inception of the court's jurisdiction. It is analogous to the filing of a bill for the appointment of a re-

ceiver; though the judges know nothing of the matter, the court has jurisdiction from the moment such a bill is filed." But the statute does not so state.

■ The indexing of a certified copy of the certificate of possession, when filed in the office of the prothonotary by the secretary, as plaintiff, in the "judgment index" does not confer upon the court jurisdiction which has not been invoked. The mere filing of a paper, which in fact is nothing more than a notice that possession of the property of the corporation has been taken, cannot confer jurisdiction upon the court in the absence of any law to the effect that such an act constitutes the beginning of legal action rather than the notice of a mere act of a state officer in the performance of his administrative duties. The secretary, just as any other citizen, may invoke the jurisdiction of the court, but the simple filing of a mere notice of an administrative act does not do so and this seems evident from the terms of the act. This paper is more particularly a notice to the county in which the corporation is located as distinguished from a notice to the commonwealth generally when filed in Harrisburg. As Judge Kirkpatrick observed with regard to an "equity receiver," the fact that he is called "plaintiff" in this simple notice does not make him one in a legal action which the paper itself does not in terms, nor by necessary or reasonable implication, purport to institute. It is not analogous to the filing of a bill for a receiver, as stated by counsel, which contains definite allegations invoking the court's jurisdiction and praying for certain, definite action of the court. The certificate does nothing of this kind. It is only a notice setting forth that the secretary has taken possession of the business and property of the corporation, does not invoke the jurisdiction of the court, and asks nothing whatever of it. It is rather analogous to the recording of a deed, mortgage, or notice of lien.

■ In addition to filing a certificate of possession in his office in Harrisburg and a certified copy thereof in the office of the prothonotary in the county where the corporation is situated, the secretary is required to file a certified copy of the certificate in the office of the recorder of deeds in every county in the commonwealth where real estate belonging to the corporation is located. The evident purpose of this requirement was to give special notice in these counties as well as in the county in which the corporation is situated. The filing of certificates in these counties does not give the courts therein jurisdiction though the secretary may at the proper time invoke their jurisdiction just as he may invoke the jurisdiction of the court in the county where the institution is located, for section 802, subd. B, of the Act of 1933 (71 PS § 733—802, subd. B), provides that: "The secretary may institute any action at law or in equity, or execute and sign any written instruments, which the institution itself could have instituted, executed, or signed."

■ Mortgage pools in an insolvent corporation stand in a different relation to the secretary from that of the general assets. The pools are trust funds which the corporation controls as a fiduciary. The act does not contemplate that they shall be liquidated with the other assets. Upon determining to liquidate the affairs of the corporation, the secretary shall forthwith give written notice to all parties interested in any of the funds constituting the mortgage pool, requiring them within thirty days to apply to the proper court or official for the appointment of substituted fiduciaries to take the place of such corporation or person. On the failure or neglect of the parties so notified to make such application within the time designated, or in case the parties in interest cannot be notified, the secretary shall himself apply for such appointment of substituted fiduciaries.

This provision shows beyond question that it was not the intention that the secretary should liquidate these trust funds. They were to be turned over to the substituted fiduciary appointed by the "proper court or official" who would administer them, while the other assets of the institution are being liquidated by the secretary. The act contemplated that the secretary would not only not liquidate these funds, but that he would not have custody of them except during the short period between the time he took possession and determined to liquidate the institution and could have a substituted fiduciary appointed. It is apparent, from the provisions of the act, that it was never intended that the "court" should have custody of these mortgage pool funds unless its jurisdiction should be invoked, for section 40 (c) of Act June 15, 1923, P. L. 809 (7 PS § 40 (c), provides that when there is no dispute as to the amount or identity of the funds and all parties in interest are sui juris, the secretary may deliver them directly to the substituted fiduciary. That is, the delivery of the funds by the secretary may be made without the consent or knowledge of the court. It is

evident that these funds were never in the custody of the court and form no part of those assets which are to be liquidated by the secretary. When he takes possession of the assets of the institution, he thereafter makes an inventory and appraisement of them and the entire liquidation is under the jurisdiction of the court, but the mortgage pools are excluded from this liquidation. These funds are kept separate and apart from the other assets. They do not belong to the depositors, stockholders, or creditors, and for this reason the secretary is required to divest himself of them as soon as he decides to liquidate, and to deliver them to the substituted fiduciary.

The secretary had no right to the custody of these funds when the bill in this case was filed. He determined to liquidate the assets of the Trust Company on April 3, 1933. It was his duty forthwith to give written notice to all parties interested in these funds requiring them within thirty days to apply to the proper court or official for the appointment of a substituted fiduciary to take the place of the Trust Company, and if they failed or neglected to make the application within that time, it was his duty to do so. He neither notified the parties in interest nor made the application himself, but did nothing and continued to hold the funds in violation of the statute. If he had performed his duties, as directed by the statute, he would have divested himself of these funds long before the bill was filed. The complainants are not attempting to take the assets of the Trust Company out of his custody or to interfere with the performance of his statutory duty in liquidating them. Consequently the decision in the case of Bank of Bay Biscayne v. Hankins, 42 F.(2d) 209, 210 (C. C. A. 5), has no application to the facts in this case. In that case the State Comptroller had taken over the bank and was liquidating the bank and administering its assets as the statutory officer intrusted with these assets for liquidation. The court said: "Whenever the laws of the state provide for supervision and control of the affairs of the bank by an authorized official, and also for the ultimate liquidation and distribution of its assets under his direction, in the event of its insolvency, it is a matter of grave consequence for any court to interfere, and that should be done only in a perfectly clear case." Even there it is recognized that in a proper case the court had power to appoint receivers to liquidate the institution. But here the secretary may continue to administer the *assets of the Trust Company* such as were involved there without interference by the receivers appointed in this case.

These mortgage pool funds not being in the possession, actual or constructive, of the court when the bill in this case was filed, the federal court had power to appoint receivers to administer them. They should have been out of the possession of the secretary before the bill was filed, and whether or not they were thereafter taken out of his possession by the delivery of them to a substituted fiduciary as the statute provided, or by the appointment of federal receivers, does not affect the performance of his duty in liquidating the Trust Company. The question here is really one of the exercise of discretion.

█ Appellants allege that this is a suit against the commonwealth of Pennsylvania and is prohibited by the Eleventh Amendment to the Constitution of the United States.

Under the facts in this case this contention is unsound.

█ The question remains as to whether or not the learned District Judge, having power to appoint receivers, abused his discretion in doing so.

In his opinion to vacate the appointment of receivers, he said: "It must be remembered that the banking department took charge of the defunct institution on February 14, 1933. Notwithstanding the fact that millions of dollars are concerned, and a large number of certificate holders are involved, nothing has been done by the banking department to provide the means for an active, intelligent, responsible administration of its pools. Just why such a situation has continued to exist has not been explained. Nonresident petitioners in this case are dissatisfied with such inaction. In the exercise of their constitutional rights, they have appealed to the equity side of this court for relief. They are alarmed over the safety of their holdings. No excuse, no explanation, and no promises of a future policy have been given. No interested group of fellow participants in the pool have entered an appearance or objected as a matter of record. This court, therefore, feels that it not only has jurisdiction, but that, in view of the status of the case, its duty as a chancellor is that that jurisdiction be recognized and that the prayed for relief be granted."

We cannot say that under all the facts of this case, the District Judge abused his discretion in appointing the receivers, and the decrees are affirmed.